CALVIN E. WILHELM ET AL., APPELLANTS, V. CHARLES SPEEDIE ET AL., APPELLEES.

FILED JUNE 28, 1922. No. 21891.

1.  Schools and School Districts: SCHOOL DISTRICTS: ESTABLISHMENT. Under the act "to provide for the districting of all territory into districts for consolidated and high school purposes, and to provide for the organizing and operating of the same," a new public school district may be established by the vote of the school electors in the proposed new district, where the old territory included a village in a public school district with a board of three members, though high school branches were taught therein and high school grades were available to pupils. Laws 1919, ch. 243; *State v. Richardson, ante,* p. 604.

2.  ———: ———: ———. OBJECTIONS: NOTICE. Statutory notice to objectors of the time and place to be heard on their objections to proposed districting for consolidated and high school purposes, under the act of 1919, may be held sufficient, if given to the first signer of each petition, where the objections are made in the form of petitions; and such notice is effective for the purpose of presenting the objections made and of procuring changes in boundaries. Laws 1919, ch. 243.

3.  Questions not raised by the pleadings may be disregarded on appeal.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*Paul Jessen,* for appellants.

*Pitzer, Cline & Tyler* and *George H. Heinke, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and DAY, JJ., REDICK, District Judge.

DAY, J.

This is an action for an injunction against the defend-

ants, who are the county superintendent of Otoe county *and the members of the school board of school district No.* 75, to restrain them from calling or holding an election of the school electors, residing within the boundaries of proposed district No. 7, for the purpose of voting on the question whether district No. 7 as proposed should be established. The trial court found that the preliminary proceedings leading up to the potential establishment of district No. 7 were regular, that the question of its final establishment was being properly submitted to the electors residing within the boundaries of said district, and thereupon dismissed the plaintiffs' petition for want of equity. From this judgment the plaintiffs have appealed. A bond was given and the proposed election superseded.

The proceedings leading up to the formation of the proposed district were had under the provisions of chapter 243, Laws 1919. That chapter provides in substance that all the territory of the several counties of the state shall be divided into school districts for high and consolidated school purposes; that within 20 days after the act becomes effective the county board of each county shall appoint two school electors of the county, who, with the county superintendent, shall constitute a committee to make such surveys and investigation as will determine an equitable adjustment of the bounds of districts for high and consolidated schools within the county; the county committee are required to meet and proceed to plat and establish a schoolhouse site and boundary lines of the proposed districts; that, wthin 10 days after the report is completed and the map prepared, the county superintendent shall designate a time for hearing, when any school elector may file objections to the plan as recommended; that after the hearing the committee is authorized to make such changes as it may deem advisable, and shall then transmit its final report to the county board, who shall record the same in the minutes of their proceedings. The act further provides that, after the filing of the report with the county board, 25 per cent. of the school electors of any new district

may within 40 days file a written protest with the state superintendent against the establishment of the boundaries and schoolhouse site, as fixed by the county committee; that upon receipt of such protest the state superintendent shall call a meeting in the office of the county superintendent, giving 10 days' notice of the same to the objectors, and to the members of the county committee whose work is sought to be affected, and shall send a member of his staff to investigate such complaint and make a detailed statement of the facts and conditions developed at such hearing in writing to the state superintendent, who shall then approve the boundaries established by the committee, or order a rearrangement of such boundaries, as in his judgment may seem best; that after the completion of the districting and the lapsing of time for hearing on appeals to the state superintendent, upon a petition of 25 per cent. of the electors in the proposed consolidated and high school districts, the county superintendent is directed to order an election to be held in such proposed district, upon giving 20 days' notice, at which the electors shall determine whether the district as promulgated by the state superintendent shall be established.

Section 6 of the act contains a proviso, as follows: "Provided, that if the proposed new district contains an organized consolidated or high school district, when a petition of not less than 51 per cent. of the school electors in said new district residing outside of the existing organized consolidated or high school districts shall be filed with the county superintendent, then he shall declare such territory to be so annexed, conditioned upon the approval of the board of education of said existing districts."

The record shows that, after the report of the redistricting committee had been duly filed, 25 per cent. of the electors in the proposed district filed a protest with the state superintendent. The district as proposed by the committee was designated as district No. 6, and included a territory eight miles east and west, and five miles north and south, having the school site in the village of Dunbar, and

the same site as that of the old district No. 75. Upon the hearing before the state superintendent, the boundaries of proposed district No. 6 were changed so that the district was five miles square, and the name changed to district No. 7. Pursuant to the determination of the state superintendent, the county superintendent called an election of the school electors to determine whether proposed school district No. 7 should be established. This is the election sought to be enjoined in this action.

It is first urged by the plaintiffs that the only method of annexing territory to an established consolidated or high school district is that pointed out in section 6, ch. 243, Laws 1919. It is argued that district No. 75, which was the district of the village of Dunbar, is a consolidated or high school district, and that additional territory could be added thereto only after a petition signed by not less than 51 per cent. of the school electors in the new territory proposed to be added had been filed with the county superintendent and approved by the board of education of district No. 75; and, as this procedure was not followed, the action of the state superintendent in proposing the establishment of school district No. 7 is without authority of law. This argument assumes that the record shows that district No. 75 was a consolidated or high school district. While it is true that district No. 75 teaches many of the grades of a high school, there is nothing in the record to show that it was either a consolidated or high school district as those terms were understood at that time. District No. 75 was governed by a board of three members, and lacked the requisite number of pupils to change its organization from a primary school to a high school district. The law at that time required that, in order to change to a high school district, a district must have more than 150 pupils of school age. The proof shows that district No. 75 had just 150 pupils. It seems plain, therefore, that the provisions of section 6 of the act in question did not apply to the facts in the case before us, as claimed by the plaintiffs.

It is next argued that, if section 6 of the act does not apply, the method of establishing a new district would be governed by other provisions of the act, and it is urged that no proper legal notice was given to the objectors by the state superintendent of the hearing upon the protest filed against the establishment of district No. 6, as proposed by the redistricting committee, and that the proceedings of the state superintendent in potentially establishing district No. 7 were without authority. As has been heretofore pointed out, the act provides that, whenever there is filed with the state superintendent a protest against the proposed districting of the committee, it becomes his duty to call a meeting in the office of the county superintendent of the county where the complaint is made "giving 10 days' notice of the same to the objectors, and to the members of the county committee whose work is sought to be affected." Section 4. It is further his duty to send a member of his staff to investigate the complaint, and be present at such hearing, and report in writing to the state superintendent the facts and conditions developed upon such hearing. The state superintendent is then authorized to approve the boundaries established by the county committee, or order a rearrangement of such boundaries, as in his judgment may seem best. The record shows that the only notice given of the hearing was sent out by the county superintendent stating the time and place of hearing. The notice was addressed to Chris Bade and others, and John Gess and others, but mailed only to Bade and Gess. Bade and Gess were the two men whose names headed the two objecting petitions. At the hearing a number of objectors were present, including Bade and Gess. While it is not entirely clear whether all of the objections urged in the petition were presented to the state superintendent, it is shown that some of the objectors participated in the discussion, and we think it may be presumed that the objections were considered. One of the objections was on account of the distance from the school site, and to some extent this relief was granted, as the state superin-

tendent reduced the size of the school district, which is the standard size. It is argued that, because notice was not given to each of the objectors, the county superintendent had no power to proceed. As we view it, the statute does not require that a notice be sent to each of the objectors. The objection was in the form of joint petitions, identical in form, and we think a service of notice upon the first signer was sufficient. The filing of the petitions by the objectors invoked the power of the state superintendent to act in the matter. The action of the state superintendent in promulgating a district does not become effective until it is ratified by a vote of the school electors in the district.

It is further argued that, inasmuch as 25 per cent. of the electors in the proposed district did not sign a petition requesting the county superintendent to call an election of the school electors to vote upon whether the proposed district should be established, therefore the election was illegally called. The question suggested by this argument is not properly raised by the pleadings, and for that reason is not reviewable, not having been presented to the district court.

The judgment of the district court is

AFFIRMED.